## AMERICAN SURETY CO. OF NEW YORK v. STATE OF OREGON ex rel. HUMFELD.

(Circuit Court of Appeals, Ninth Circuit. June 27, 1924.)

No. 4226.

1. Waters and water courses ⬅222—Bond of contractor of irrigation project protection to state, laborers, and materialmen.

A bond of one contracting for construction of an irrigation system to reclaim desert land under the Carey Act (Comp. St. § 4685) *held* to afford protection under Or. L. §§ 2991, 5582, 5585, and 6719, to state, laborers, and materialmen.

2. Waters and water courses ⬅222—Contractor's bond valid, though dual as to beneficiaries.

That bond of contractor of an irrigation project protects state, laborers, and materialmen does not affect its validity.

3. Waters and water courses ⬅222—Bond of contractor of irrigation project in Oregon construed with reference to statutes of that state; "contract with federal government for public work."

A contract for construction of an irrigation system to reclaim desert lands under the Carey Act (Comp. St. § 4685) is not a "contract with the federal government for public work," under Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), but is a contract with the state of Oregon, and its terms are to be construed with reference to Oregon statutes.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by the State of Oregon, on the relation of Harry Humfeld, against the American Surety Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. S. Nash and S. J. Graham, both of Portland, Or., for plaintiff in error.

Arthur A. Goldsmith and Beach & Simon, all of Portland, Or., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The desert land board of the state of Oregon entered into a contract with the Jordan Valley Land & Water Company, hereinafter called the contractor, for the construction of an irrigation system to reclaim certain desert lands under the provisions of the Carey Act (Comp. St. § 4685). To secure the performance of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the contract, the contractor, with the plaintiff in error as surety, executed a bond to the state of Oregon in the penal sum of $100,000. The bond was also conditioned that the principal would promptly pay all persons supplying it with labor or materials used in and for the prosecution of the work provided for in said contract. The contractor defaulted on its contract and failed to pay the claim of the E. I. du Pont de Nemours & Co. in the sum of $2,900.75. That claim, among others, was assigned to Humfeld, the relator herein, who brought an action against the plaintiff in error to recover the amount due thereon. By stipulation the case was tried before the court without a jury, and judgment on the claim so assigned was rendered in favor of the defendant in error. The claim was for blasting supplies sold and delivered to the contractor for use in the construction of the irrigation project.

[1] The plaintiff in error contends that the only permissible remedy upon the bond is that which is prescribed by the statutes of the state of Oregon, accepting the condition of the Carey Act, and that before any liability in favor of third parties can arise, it must appear that the incompleted works have been sold and that the state is not asserting any claim against the bond. Section 5582, Oregon Laws, provides that the contract shall not be entered into on the part of the state until the withdrawal of the lands by the Department of the Interior and the filing of a satisfactory bond on the part of the proposed contractor, "which bond shall be in a penal sum not less than two per cent. of the lien to be allowed, and shall be conditioned for the faithful performance of the provisions of the contract with the state." Section 5585 provides that, in case of forfeiture, cancellation, or relinquishment of any contract of the state, it shall be the duty of the board so to declare and to publish notice thereof, and give notice that upon a day fixed proposals will be received at the office of the board for the purchase of the incompleted works and for the completion of the irrigation works in accordance with the prescribed plans and specifications, and that the money received by the board from the sale of the partially completed works shall first be applied "to the expenses incurred by the state in their forfeiture and disposal, and the surplus, if any exists, shall be paid to the original contractors with the state."

It is contended that, where the same statute creates a liability and provides a remedy, the remedy so provided is exclusive, and that the provisions in the bond in the present case which protect those who furnished labor and material are to be disregarded as surplusage. But the statute here relied upon must be construed in connection with certain other sections of the Oregon Laws. Section 2991 provides that all contractors who shall enter into a formal contract with the state for the construction of any building or the prosecution and completion of any work shall be required to execute the usual penal bond, with good and sufficient sureties, "with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts," and further provides that persons so supplying labor or material shall have a right of action and may bring suit in the name of the state against the contractor and his sureties,

and prosecute the same to final judgment and execution. Section 6719 is of similar import. These provisions of the Oregon Laws have been sustained in School Dist. No. 30 v. Alameda Constr. Co., 87 Or. 132, 169 Pac. 507, 788, and Multnomah County v. United States Fidelity & Guaranty Co., 87 Or. 198, 170 Pac. 525, L. R. A. 1918C, 685.

The plaintiff in error relies upon Sauve v. Title Guaranty & Surety Co., 29 Idaho, 146, 158 Pac. 112. That was a case in which a purchaser of water rights from a construction company brought suit against the surety on the construction company's bond to recover damages for failure to complete an irrigation project; the plaintiff contending that by the construction contract it was expressly provided that the contractor would carry out a former contract between the construction company and the settlers, and that in that respect it was different from the ordinary Carey Act construction contract. The Supreme Court of Idaho held that all settlers who had purchased water rights under either contract would have equal protection under the bond, and that there could be no right of action by any individual settler. The court said of the statute:

"It also declares the purpose of the bond and provides the manner of its enforcement. The liability and the remedy is created by the same statute. This being true, it would seem to us that the remedy provided in the statute is exclusive, and that the respondent company is in a position to insist upon the statutory remedy being followed."

But the court also observed:

"It might be conceded that provisions other than those contained in this section may be inserted in the contract and become binding upon the construction company, provided the interest of the state and of the settlers on the project are in no manner jeopardized by such provisions. But it is clear to us that the bond equal to the sum of 5 per cent. of the estimated cost of the works and conditioned for the faithful performance of the provisions of the contract * * * was never intended to secure such additional provisions."

The court cited also the statutory provision of Idaho that the bond should be in a penal sum equal to 5 per cent. of the estimated cost of the works, and "conditioned for the faithful performance of the provisions of the contract with the state." The Idaho law differs materially from the Oregon law, in that in the latter no limit is placed upon the amount of the penal sum of the bond that may be required of the contractor, and express provision is made for protection by the bond of the claims of third parties who furnish labor and material in the performance of the contract.

[2] In Clatsop County v. Feldschau et al., 101 Or. 369, 199 Pac. 953, 18 A. L. R. 1221, it was held that the award of a contract for an improvement is a sufficient consideration for the promise of a contractor and his surety to pay all persons supplying the contractor with labor or materials in the performance of the contract, and that such persons may ordinarily sue on the bond, on the principle that a third person for whose benefit a contract is made by another may sue thereon, though the consideration does not directly move from him, and that recovery may be had against a surety by one who furnishes such labor and supplies to the contractor. In brief, the bond under the Oregon law

affords protection both to the state and to laborers and materialmen. It prescribes the remedy of the former, but it leaves the latter to pursue their common-law remedy. This the relator has done in the present case, and the state has made no objection thereto. That the bond is dual in respect to beneficiaries and conditions does not affect its validity. Stephenson v. Monmouth M. & M. Co., 84 Fed. 114, 28 C. C. A. 292.

[3] We find no merit in the contention that the contract here under consideration was a contract with the federal government for a public work, rather than a contract with the state of Oregon, and that the Act of Congress of August 13, 1894, as amended by the Act of February 24, 1905, 33 Stat. 811 (Comp. St. § 6923), is applicable. That statute is by its terms limited to "formal contracts with the United States" for the construction of public buildings and public works. The contract in the case at bar is a contract with the state of Oregon, and its terms are to be construed with reference to the state statutes. Nothing to the contrary is found in the decision of this court in Twin Falls Salmon River Land & W. Co. v. Caldwell, 242 Fed. 177, 155 C. C. A. 17, where the court referred to the government in carrying out the Carey Act projects as acting through the state as its agency. The opinion in that case expressly asserted the power of the state to make all necessary contracts for the reclamation of land withdrawn under the provisions of the Carey Act.

Nor do we find merit in the contention that the foregoing view of the law applicable to the case has the effect to nullify the terms and provisions of the Carey Act or the legislation of the state in accepting the same. The Oregon law expressly provides for a bond to insure the performance of contracts for irrigation of the lands received under the Carey Act. It is obviously the intention of the law to require a bond sufficient for that purpose, as well as sufficient to protect the claims of laborers and those who furnish material. The statute, as we have seen, places no limit upon the amount of the penal sum of the bond that may be required. By thus protecting laborers and materialmen, substantial inducement is offered to extension of credit to contractors, resulting in distinct benefit to them and the promotion of reclamation schemes.

The judgment is affirmed.