## Hester, *et. als.* v. Keith & Kelly.

1. The eighth section of the act of 1807, which requires the sheriff to endorse upon an execution the day of its receipt, is merely directory; and its non-observance cannot prejudice a plaintiff. A lien upon the defendant's property attaches immediately upon the *delivery* of the execution.
2. The clerk of the court issuing an execution, and the sheriff receiving it, cannot vacate the same by substituting an exact copy in its stead; and thus impair, to the prejudice of the plaintiff, the lien created by the original.
3. Though the condition of a bond for the prosecution of a *supersedeas*, does not conform to the statute, yet as the bond was effectual to delay the collection of the execution; upon discharging the *supersedeas* it becomes absolute, and may be prosecuted as an obligation at common law.

Writ of error to the County Court of Tuscaloosa.

On the 3d June, 1839, McCown & Conrow, two of the plaintiffs in error, obtained from the judge of the county court of Tuscaloosa, an order to supercede an execution theretofore issued against their goods and chattels, lands and tenements, by the clerk of that court; they, before the order was to become operative, "first giving bond with good security, in double the amount of the execution."

McCown & Conrow, entered into bond with the plaintiff, Hester, as their surety, with a condition, in these words: " Now, if the said Alexander McCown (the plaintiff,) shall well and truly pay and satisfy such judgment as shall be rendered by said court in said cause, then the above obligation to be void," &c.

Upon the matters alleged in the petition for a *supersedeas*, being considered by the court, the *supersedeas* was discharged, and a judgment rendered for costs, against McCown & Conrow, at whose instance, the presiding judge sealed a bill of exceptions.

From the bill of exceptions, it appears that the clerk of the county court stated, that sometime in March, previous to the 15th day, he called the attention of the sheriff to a bundle of ex-

ecutions which he had issued, (the execution in this case being one) and offered them to him, when he remarked that he would attend to them in a few days. In a few days after, he took the bundle of executions and handed them to the sheriff, who took them, remarking that he was very busy, and then handed them back, with the request that he (the clerk) would keep them for him. Sometime in April, he (the clerk) placed the execution issued in this case, in the possession of the sheriff, who, some days after, brought it into the clerk's office, and desiring the witness to copy it, remarked that he had actually received it in March, but in the hurry of business, had endorsed its reception as of a day in April; that he did not like to erase his endorsement, and if the witness would copy it, he would be relieved from the necessity of making an erasure. The witness copied the execution literally, without any change of date.

The sheriff stated that about the 11th March, the clerk of the county court handed him a bundle of executions, (among which was the execution in this case); he took them into his hands; but being very busy, he handed them back and requested the clerk to take care of them for him, considering he had then received them. About the 9th of April, the clerk brought them into the witness' office, and he immediately endorsed them as received on that day; that very soon after, recollecting that he had previously received them, and not wishing to erase the endorsement he had made, he requested the clerk to copy them, which he did and returned them back to the witness, who endorsed the copies as received on the 11th March, 1839, which he thinks, was the day the originals came to hand. The executions, (both the original and copy) in this case were shown to the court.

It further appeared in proof, that on the 30th March, 1839, McCown & Conrow executed a deed of assignment to B. F. Porter, Esq. which purports to convey all their property.

J. L. MARTIN, for the plaintiff.

PECK and MOODY, for the defendants

Hester *et als.* v. *Keith & Kelly.*

COLLIER, C. J.—The eighth section of the act of 1807, "concerning executions, and for the relief of insolvent debtors," (Aik. Dig. 165,) enacts that "no writ of *fieri facias*, or other writ or execution, shall bind the property of the goods, against which such writ is sued forth, but from the time such writ shall be delivered to the sheriff, undersheriff, coroner, or other officer, to be executed; and for the better manifestation of said time, such sheriff, coroner, his deputy or agent, shall, upon the receipt of any such writ, without fee for doing the same, endorse upon the back thereof the day of the month and year, when he received the same; and if two, or more writs shall be delivered against the same person on the same day, that which was first delivered shall be first satisfied." The statute then enacts a penalty against the officer holding an execution, for a neglect of the duty it enjoins, and in addition, declares that he shall be liable to the action of the party aggrieved by the omission.

This act, in requiring the the endorsement of the reception of an execution, must be regarded as directory, and its non-observance by an officer in whose hands an execution is placed, cannot prejudice a plaintiff. The lien attaches, as soon as the execution is received, and the noting upon it the day of its receipt, is only intended to evidence the fact. But the requisition of the statute will not exclude all other proof; and it is competent to show the precise time the execution was delivered to the officer. That such is a proper construction of the act, is apparent from its terms, which declares that the *lien* shall become operative from the *delivery* of the execution; and that the execution first *delivered*, shall be first satisfied.

If then, the original execution was received by the sheriff, a lien immediately attached upon the property of McCown & Conrow, in order to its satisfaction, and it was incompetent for the clerk and sheriff to vacate it, by substituting a copy in its stead. True, we have a statute which authorizes a plaintiff to have several executions at the same time, (under some circumstances) upon the same judgment: but there is no law which approves the proceedings of the clerk and sheriff in the present case.

Hester *et als.* v. Keith & Kelly.

The condition of the bond taken by the clerk on issuing the *supersedeas,* is clearly variant from that prescribed by law. The statute requires that the bond be "conditioned to pay and satisfy to the said plaintiff, or plaintiffs, the sum of money specied in said execution, together with interest and costs, in case the *supersedeas* shall be set aside or annulled." (Aik. Dig. 165.) The bond executed in this case, is conditioned that Alexander McCown shall well and truly pay and satisfy such judgment as should be rendered by the county court. The bond given and that required are then materially different; and consequently, the surety of McCown & Conrow, is not liable to a judgment, as the act prescribes; yet, as the defendants have been delayed in the collection of their execution, by the bond that was executed, there is a sufficient consideration to sustain it, and it must be regarded as imposing a legal obligation at common law, so long as the judgment of the county court remains unreversed.

As the present is a case of no *intrinsic* difficulty, we have thought it proper to express an opinion upon the question raised upon the record, though we are constrained to repudiate the cause. Upon looking into the judgment, we discover that David Hester, who is made a plaintiff by the writ of error, is not a party to the judgment. For the misjoinder, the writ of error is dismissed.